# EXHIBIT 1

WEIR GREENBLATT PIERCE, LLP
A Pennsylvania Limited Liability Partnership
By: Jennifer Hiller Nimeroff, Esquire
(ID# 027241995)
35 Kings Highway East
Haddonfield, New Jersey 08033
(856) 429-7750
(856) 427-0360 (fax)

Attorneys for Plaintiffs

| | |
|---|---|
| BRENDAN W. BUTLER and SARAH K. BUTLER h/w | SUPERIOR COURT OF NEW JERSEY LAW DIVISION CAMDEN COUNTY |
| Plaintiff, | |
| v. | DOCKET NO.: CAM-L-001780-24 |
| WILLIAM MCFETRIDGE and DANIEL R. WHITE and DANIEL R. WHITE REALTORS LLC and BOROUGH OF HADDON HEIGHTS | CIVIL ACTION SUMMONS |
| Defendants. | |

From The State of New Jersey To The Defendant(s) Named Above:
**Borough of Haddon Heights**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) **If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.** A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your

rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

*Michelle M. Smith*
Michelle M. Smith
Clerk of the Superior Court

DATED:  June 13, 2024

Name of Defendant to be Served:        **Borough of Haddon Heights**
Address of Defendant to be Served:     **625 Station Avenue**
                                       **Haddon Heights, NJ 08035**



### New Jersey Judiciary
### Civil Practice Division
# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

| For Use by Clerk's Office Only | | | | |
|---|---|---|---|---|
| Payment type ☐ check ☐ charge ☐ cash | Charge/Check Number | Amount $ | Overpayment $ | Batch Number |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Jennifer Hiller Nimeroff, Esquire | 856-429-7750 ext. | Camden |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| Weir Greenblatt Pierce LLP | |

| Office Address - Street | City | State | Zip |
|---|---|---|---|
| 35 Kings Highway East | Haddonfield | NJ | 08033 |

| Document Type | Jury Demand |
|---|---|
| Complaint | ☒ Yes ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| Brendan W. and Sarah K. Butler h/w, Plaintiff | Brendan W. Butler and Sarah K. Butler h/w v. William McFetridge, et al. |

Case Type Number (See page 3 for listing)  617; 699

| | | |
|---|---|---|
| Are sexual abuse claims alleged? | ☐ Yes | ☒ No |
| Does this case involve claims related to COVID-19? | ☐ Yes | ☒ No |
| Is this a professional malpractice case? | ☐ Yes | ☒ No |
| If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. | | |
| Related Cases Pending? | ☐ Yes | ☒ No |
| If "Yes," list docket numbers | | |
| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | ☐ Yes | ☒ No |
| Name of defendant's primary insurance company (if known) | ☐ None | ☒ Unknown |

| **The Information Provided on This Form Cannot be Introduced into Evidence.** |
| --- |

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?  ☐ Yes  ☒ No
If "Yes," is that relationship:
☐ Employer/Employee  ☐ Friend/Neighbor  ☐ Familial  ☐ Business
☐ Other (explain) _____

Does the statute governing this case provide for payment of fees  ☒ Yes  ☐ No
by the losing party?  N.J.S.A. 20:3-26(c) and N.J.S.A. 56:8-19

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

♿  Do you or your client need any disability accommodations?  ☐ Yes  ☒ No
   If yes, please identify the requested accommodation:

   Will an interpreter be needed?  ☐ Yes  ☒ No
   If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature: _____

WEIR GREENBLATT PIERCE LLP
A Pennsylvania Limited Liability Partnership
By:    Jennifer Hiller Nimeroff (Id. No. 027241995)
35 Kings Highway East
Haddonfield, New Jersey 08033
(856) 429-7750
(856) 427-0360 (fax)
jhiller@wgpllp.com                                    Attorneys for Plaintiffs

---

| | | |
|---|---|---|
| BRENDAN W. BUTLER and | : | SUPERIOR COURT OF NEW JERSEY |
| SARAH K. BUTLER h/w | : | LAW DIVISION |
| 509 Guyer Drive | : | CAMDEN COUNTY |
| Haddon Heights, New Jersey 08035 | : | |
| | : | DOCKET NO.: CAM-L- |
| Plaintiffs | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | **COMPLAINT** |
| WILLIAM MCFETRIDGE | : | |
| 107 West Preston Ave. | : | |
| Wildwood Crest, New Jersey 08260 | : | |
| | : | |
| and | : | |
| | : | |
| DANIEL R. WHITE | : | |
| 524 Station Ave. | : | |
| Haddon Heights, New Jersey 08035 | : | |
| | : | |
| and | : | |
| | : | |
| DANIEL R. WHITE REALTORS LLC | : | |
| 524 Station Ave. | : | |
| Haddon Heights, New Jersey 08035 | : | |
| | : | |
| and | : | |
| | : | |
| BOROUGH OF HADDON HEIGHTS | : | |
| 625 Station Ave. | : | |
| Haddon Heights, New Jersey 08035 | : | |
| | : | |
| Defendants. | : | |

1

Plaintiffs, Brendan W. Butler and Sarah K. Butler, h/w, by and through their counsel, Weir Greenblatt Pierce LLP, file this Complaint against William McFetridge, Daniel R. White, Daniel R. White Realtors LLC and the Borough of Haddon Heights arising from flooding conditions which were misrepresented, omitted and/or concealed in connection with the sale of real property and which have resulted in a dangerous condition, nuisance, trespass and taking of the real property, and aver as follows:

<u>PARTIES AND VENUE</u>

1.      Plaintiffs, Brendan W. Butler and Sarah K. Butler nee Brown (the "Plaintiffs"), are adult individuals who, at all relevant times hereto, own the property situate, and reside, at 509 Guyer Drive, Haddon Heights, New Jersey 08035 (the "Guyer Property").

2.      Defendant, William McFetridge ("Mr. McFetridge"), is an adult individual and citizen of New Jersey, residing at 107 West Preston Avenue, Wildwood Crest, New Jersey 08260.

3.      Defendant, Daniel R. White ("Mr. White"), is an adult individual and citizen of New Jersey, whose principal place of business is situate at Daniel R. White Realtors, LLC, 524 Station Avenue, Haddon Heights, New Jersey 08035.

4.      Defendant, Danieal R. White Realtors, LLC ("DRWR"), is a limited liability company formed under the laws of the State of New Jersey and having a principal place of business situate at 524 Station Avenue, Haddon Heights, New Jersey 08035.

5.      Defendant, Borough of Haddon Heights (the "Borough"), is a municipality located within the County of Camden and the State of New Jersey, with its municipal offices located at 625 Station Avenue, Haddon Heights, New Jersey 08035.

6.      This action arises from (a) the Borough's conduct related to a drainage easement situate on the Guyer Property and certain neighboring properties, and (b) material

misrepresentations, omissions and/or concealments made by certain of the defendants in connection with the sale of the Guyer Property.

7.      Venue is appropriate in the Superior Court, Law Division under *R.* 4:3-1(a)(5) as the action primarily seeks monetary relief and does not involve probate or family law matters, among others.

8.      Venue is appropriate in Camden County under *R.* 4:3-2, as this action involves damages to real property situate in Camden County, Plaintiffs' causes of action arose in Camden County, the business entity defendant conducts business in Camden County and the municipality defendant is situate in Camden County.

<u>BACKGROUND</u>

9.      The property at issue in this Complaint is a personal residence located at 509 Guyer Drive, Haddon Heights, New Jersey 08035 (as previously defined, the "Guyer Property").

10.     Plaintiffs' deed to the Guyer Property, which was duly recorded with the Camden County Clerk's Office at Deed-OR Book 12262, Page 530, *et seq.* and which contains a legal description of the Guyer Property, is attached hereto as Exhibit A.

11.     Situate on the Guyer Property and several neighboring properties, near the rear property line, is a drainage easement; specifically, a 15-foot wide drainage swale that spans across 501, 505, 509, 513 and 517 Guyer Drive and 500, 504 and 508 12th Avenue, in the Borough of Haddon Heights, in favor of the Borough (the "Drainage Easement").

12.     The Drainage Easement is comprised of a drainage system which, upon information and belief, contains inlets and underground stormwater pipes.

13.     The Drainage Easement, including the drainage system therein was, upon information and belief, initially created by the developer of the aforementioned properties and

subsequently adopted, transferred and/or assigned to the Borough, in fact or by operation of law. *See* recorded Deed from Gemberling Homes, Inc. to William T. Lowther and Donna Jean Lowther dated March 10, 1972, annexed hereto as Exhibit "B".

14.     The Drainage Easement is recorded in the Borough's land records and appears on the Borough's Official Map.

15.     The Drainage Easement is intended to remain free of improvements such as structures, plantings and the like, so as not to damage, interfere or affect the direction of the flow of the drainage channels and/or obstruct or retard the flow of water through the drainage channels. Exhibit "B".

16.     In or about February of 2021, Brooks and Kristen Cass, owners of 513 Guyer Drive, Haddon Heights, New Jersey, which property is adjacent to the Guyer Property, submitted an application to the Borough for two variances in connection with construction of an in-ground swimming pool and other improvements in their backyard.

17.     In or about December of 2021, the Casses' variance applications were approved by the Borough, despite the fact that the construction and improvements were on top of and otherwise interfered with the Drainage Easement, which has caused stormwater that would otherwise find its way to a drain, to be diverted into backyard of the Guyer Property.

18.     After the variance applications were approved, the Casses went forward with the construction of an in-ground swimming pool and other improvements in their backyard.

19.     In or about October of 2022, Plaintiffs became interested in purchasing the Guyer Property from its then owner since July of 2021, Mr. McFetridge.

20.     At that time, Mr. McFetridge was represented by his real estate sales agent, DRWR and specifically, Mr. White, in connection with the sale of the Guyer Property.

21.     DRWR and Mr. White are the "local", "in-town" realtors for Haddon Heights, having offices in the small business district of Haddon Heights.

22.     At all times relevant hereto, and for many years leading up to 2022, DRWR and Mr. White provided real estate services to residents of Haddon Heights.

23.     At all times relevant hereto, and for many years leading up to 2022, DRWR and Mr. White were very familiar with the various neighborhoods in Haddon Heights, including the neighborhoods' unique features, attributes and imperfections.

24.     This familiarity of DRWR and Mr. White extended to the neighborhood where the Guyer Property was located.

25.     Mr. McFetridge was residing at the Guyer Property prior to, during and subsequent to the construction of the in-ground swimming pool and other improvements in the Casses' backyard.

26.     On October 5, 2022, Mr. McFetridge accepted an offer from Plaintiffs to purchase the Guyer Property, after only living at the Guyer Property since July of 2021.

27.     On October 5, 2022, Mr. McFetridge and the Plaintiffs entered into a Real Estate Sales Contract for the sale of the Guyer Property to the Plaintiffs for the sum of $503,000.00.

28.     In connection with the sale of the Guyer Property, Mr. McFetridge prepared for prospective buyers a Seller's Property Condition Disclosure Statement, prepared as of May 11, 2022, a true copy of which is attached hereto as Exhibit C, which he provided to DRWR and Mr. White.

29.     The Seller's Property Condition Disclosure Statement, prepared and signed by Mr. McFetridge, states that the Seller, Mr. McFetridge is:

a. not "aware of any water leakage, accumulation or dampness within the basement or crawl spaces or any other areas within any of the structures on the [Guyer Property]", Exh. C, No. 9;

b. not "aware of any leaks, backups, or other problems relating to any of the plumbing systems and fixtures (including pipes, sinks, tubs and showers), or of any other water or sewage related problems", *Id.* at No. 40;

c. not "aware of any drainage or flood problems affecting the [Guyer Property]", *Id.* at No. 70;

d. not "aware of any encroachments, utility easements, boundary line disputes, or drainage or other easements affecting the property", *Id.* at No. 72;

e. not "aware of any condition that exists on any property in the vicinity which adversely affects, or has been identified as possibly adversely affecting, the quality, or safety of the air, soil, water and/or physical structures present on [the Guyer Property]", *Id.* at No. 78a;

f. not "aware of material defects to the property, dwelling, or fixtures which are not disclosed elsewhere on [the Seller's Property Condition Disclosure Statement][.] (A defect is "material," if a reasonable person would attach importance to its existence or non-existence in deciding whether or how to proceed in the transaction)", *Id.* at No. 96; and

g. not "aware of any water leakage, accumulation or dampness . . . on the property", *Id.* at No. 126.

30.    Additionally, the opening paragraph of the Seller's Property Condition Disclosure Statement states: "The Seller is aware that he or she is under an obligation to disclose any known material defects in the Property even if not addressed in this printed form." *Id.*

31.    Mr. White, upon receipt of Mr. McFetridge's Property Condition Disclosure Statement, affixed his signature thereto, confirming that he "visually inspected the [Guyer Property] with reasonable diligence to ascertain the accuracy of the information disclosed by [Mr. McFetridge]." *Id.* This was done prior to Mr. White's providing McFetridge's Property Condition Disclosure Statement to Plaintiffs. *Id.*

32.     Prior to closing, Mr. White provided Mr. McFetridge's Property Condition Disclosure Statement to Plaintiffs' agent, who then provided it to Plaintiffs.

33.     At the time he prepared the Property Condition Disclosure Statement and/or between the time he prepared the Property Condition Disclosure Statement and entering into the Real Estate Sales Contract, Mr. McFetridge knew or should have known that:

   a.   there was water leakage, accumulation or dampness within the basement or crawl spaces or other areas within the structures on the Guyer Property;

   b.   there were water related problems on the Guyer Property;

   c.   there were drainage or flood problems affecting the Guyer Property;

   d.   there was a drainage easement affecting the Guyer Property;

   e.   conditions existed on the Casses property which adversely affected the soil, water and/or physical structures present on the Guyer Property;

   f.   there were material defects to the Guyer Property, the existence of which would impact the Plaintiffs' decision of whether or how to proceed in the transaction; and

   g.   there was water leakage, accumulation and dampness on the Guyer Property (collectively, the "Issues").

34.     Mr. McFetridge failed to disclose any of the Issues to the Plaintiffs.

35.     Upon information and belief, Mr. White and DRWR were also aware, or should have been aware, at that time, of the Issues, as they were familiar with the Guyer Property, the surrounding community, the real estate market, and specifically the construction of the in-ground swimming pool and re-grading of the Casses property.

36.     Prior to closing, Plaintiffs learned of the Drainage Easement.

37.     Prior to closing, Plaintiffs inquired with the Borough about who was responsible for the maintenance and operation of the drainage system within the Drainage Easement.

7

38.     The then Borough Manager and/or Manager of the Public Works Department, David Taraschi, explained to Plaintiffs that the Borough was responsible for the maintenance and upkeep of the drainage system.

39.     Indeed, the Borough is a governmental entity that is responsible for, among other things, the maintenance of drainage systems within its jurisdictional boundaries and in such a manner as to protect its citizens from flooding which otherwise is caused by its own governmental actions. Likewise, the Borough is required to meet and maintain certain standards consistent with its own stormwater management guidelines, those of the County of Camden, and state regulations and guidelines, among other standards and guidelines, statues and regulations.

40.     Based upon the representations made in Mr. McFetridge's Property Condition Disclosure Statement, Mr. White's and DRWR's acknowledgement of the accuracy of the information contained in the Disclosure Statement, and importantly, the Borough's assurances that it was responsible for the maintenance and upkeep of the drainage system in the Drainage Easement, Plaintiffs proceeded with their purchase of the Guyer Property.

41.     Closing on the purchase of the Guyer Property occurred on November 4, 2022.

42.     Plaintiffs immediately moved into the Guyer Property following the closing.

43.     Within weeks of Plaintiffs moving into the Guyer Property, on or about November 16, 2022, a rain storm occurred which resulted in flooding in the backyard area of the Guyer Property, in and around the Drainage Easement.

44.     Plaintiffs immediately contacted the Borough to report the flooding in their backyard and to ask for assistance.

45.     Thereafter, Plaintiffs submitted an application to the Borough to build a fence in the backyard of the Guyer Property. Plaintiffs' application was denied by the Borough (Mr.

8

Taraschi) because the location of the proposed fence was in the area of the Drainage Easement and Mr. Taraschi advised that the Borough needed to have access to the Drainage Easement. Plaintiffs' subsequent proposal, situating the fence elsewhere, was approved.

46.    Contrary to the information they received from the Borough prior to purchasing the Guyer Property, and at the time of submitting their application to build a fence, Plaintiffs were later informed by Mr. Taraschi, in or about February of 2023, that the drainage system within the Drainage Easement was not the Borough's responsibility, but instead, was the responsibility of the Plaintiffs and their neighbors.

47.    Following repeated flooding on and in the Guyer Property, and at Plaintiffs' request, Mr. Taraschi had a meeting with the Plaintiffs at the Guyer Property.

48.    During this meeting, Mr. Taraschi explained that he made a mistake during his initial meeting with the Plaintiffs, where he said the drainage system was maintained by the Borough, and apologized for the confusion he may have caused.

49.    Plaintiffs subsequently investigated the history surrounding the Drainage Easement, since they questioned the reliability of the information they had received from the Borough.

50.    Based upon Plaintiffs' investigation, the drainage system contained within the Drainage Easement is owned by the Borough and the Borough is responsible for the design, maintenance and operation of such drainage system.

51.    Despite its ownership of the drainage system within the Drainage Easement, at no time since Plaintiffs brought the flooding issue to the Borough's attention has the Borough examined, investigated and/or undertaken any actions with respect to the Drainage Easement in the back of the Guyer Property.

52.     In fact, the Borough has undertaken no monitoring, maintenance or other material operations to either assure that the drainage system within the Drainage Easement in the back of the Guyer Property is operating correctly, or even operating at all.

53.     Additionally, the Borough is aware of obstructions having been built in the area of the Drainage Easement and has taken no action to remove the obstructions or rectify the situation.

54.     Plaintiffs learned that on or about October 24, 2023, a compliance evaluation of the Borough of Haddon Heights was conducted by the New Jersey Department of Environmental Protection, Department of Water Compliance and Enforcement ("NJ DEP"), and that the NJ DEP found numerous violations by the Borough of provisions of the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-1, *et seq.,* and the New Jersey Pollutant Discharge Elimination System regulations, N.J.A.C. 7:14A-1, *et seq.*

55.     Among other things, the NJ DEP reported to the Borough that (a) the Guyer Avenue swale does not properly convey stormwater to the inlet within the Drainage Easement, (b) the stormwater conveyance system behind Guyer Avenue required maintenance, and  (c) the Guyer Avenue swale and inlet needed to be added to the Borough's program for inspection, cleaning and maintenance.

56.     Upon information and belief, at no time after receipt of the NJ DEP's compliance evaluation did the Borough inform the NJ DEP that the Borough did not own the drainage system within the Drainage Easement and/or that it had no legal obligation or responsibility to monitor, inspect and/or maintain the drainage system.

57.     Upon information and belief, the Borough has taken no actions to address the deficiencies identified in the NJ DEP's compliance evaluation.

58.     The Guyer Property continues to experience extensive flooding in and about the Drainage Easement, and beyond, damaging the backyard and rendering the backyard unusable.

59.     The crawlspace to the Guyer Property is routinely flooded with stormwater and runoff from the Casses property.

60.     Upon information and belief the flooding of the Guyer Property has impacted the integrity of the foundation of the residential structure on the Guyer Property.

61.     In fact, despite the absence of any disclosure regarding it, Plaintiffs discovered that their house sits on a house jack—a method typically used to remedy sagging and uneven floor joists due to foundation settlement and moisture damage in the crawl space of a home.

62.     As a direct and proximate result of the Borough's allowing the improvements to the property adjacent to the Guyer Property which were constructed on or about the Drainage Easement and which divert stormwater onto the Guyer Property, and its failure to examine, investigate, monitor, maintain and/or undertake any material operations with respect to the Drainage Easement and the drainage system therein contained, the Guyer Property continues to be subjected to the incursion of water now and into the future.

## COUNT I – NEGLIGENCE/DANGEROUS CONDITION
### (Borough of Haddon Heights)

63.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 62 above as if fully set forth herein.

64.     The Borough has a duty to maintain, inspect, repair and operate its drainage systems in such a manner as to protect its citizens and residents from flooding and flood damage.

65.     The Borough has a duty to maintain, inspect, repair and operate its drainage systems in such a manner so as not to artificially direct stormwater and/or floodwater toward the Guyer Property and/or cause, increase or endanger Plaintiffs with additional stormwater or flooding.

66.     Notwithstanding a duty to the contrary, the Borough undertook various actions and/or failed to avoid such other actions as to cause, contribute and greatly increase the risk of flooding to Plaintiffs by, among other things:

    (a)    failing to properly design the drainage system within the Drainage Easement so as to avoid creating cumulative impacts of stormwater at or near the Guyer Property thus causing Plaintiffs damage;

    (b)    failing to maintain, operate, inspect, and/or repair the drainage system within the Drainage Easement in such a manner as to reasonably protect Plaintiffs from the risk of stormwater collecting at the Guyer Property such as to cause flood damage;

    (c)    allowing Plaintiffs' neighbors to re-grade their backyard and construct an in-ground swimming pool on the Drainage Easement, the combined effect of which causes stormwater to be diverted to the Guyer Property and causes flood damage;

    (d)    refusing to address and ignoring prior concerns and notice that stormwater could and/or would be diverted to the Guyer Property as a result of the improvement to the Plaintiffs' neighbor's property such that it could cause future flooding events to the Guyer Property;

    (e)    failing to maintain the drainage system in a manner such that stormwater could accumulate at the Guyer Property and be unable to exit the area without causing damage to the Guyer Property;

    (f)    failing to investigate how the drainage system within the Drainage Easement was designed to operate and/or was operating, such that a future risk of flooding was a likely future event.

67.     In the aggregate, these actions and/or failures to act by the Borough are the proximate cause of damages suffered by Plaintiffs since they acquired the Guyer Property in 2022, and will continue to cause damages to Plaintiffs in the future.

68.     Further, as a direct and proximate cause of the actions and inactions of the Borough identified herein, Plaintiffs suffered significant damage to their property and home, have had their quality of life negatively impacted, have suffered significant devaluation of their property and will

continue to suffer the inability to economically market their property, thus having the value of their property taken without just compensation by the Borough, and have suffered other economic and non-economic damages as a result therefrom.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Borough of Haddon Heights for compensatory damages sustained as a result of the direct and indirect physical impacts to the Guyer Property, the devaluation of the Guyer Property, their quality of life impacts, and recovery of attorneys' fees, costs and interest commensurate with such losses.

## COUNT II – NUISANCE
### (Borough of Haddon Heights)

69.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 68 above as if fully set forth herein.

70.     The actions and inactions of the Borough, as described and averred herein, caused the incursion of significant amounts of stormwater onto Plaintiffs' property (*i.e.,* the Guyer Property) and into the crawl space of their home.

71.     The actions and inactions of the Borough, as described and averred herein, caused unreasonable interference with Plaintiffs' reasonable use and enjoyment of the Guyer Property, including but not limited to use and enjoyment of their backyard which is and continues to be repeatedly flooded with stormwater, contains an offensive odor and attracts flies and other insects, among other undesirable effects from the stormwaters.

72.     As a direct and proximate result of the Borough's actions and inactions, as described and averred herein, Plaintiffs have suffered harm such as significant damage to their property and home, have had their quality of life negatively impacted, have suffered significant devaluation of their property and will continue to suffer the inability to economically market their

property, thus having the value of their property taken without just compensation by the Borough, and have suffered other economic and non-economic damages as a result therefrom.

73.     The inability to live peacefully in their home and maintain a quality of life and quiet enjoyment in their property resulting from the actions and inactions of the Borough, and the future probabilities of continued flooding have created a nuisance for which Plaintiffs have suffered as herein alleged.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Borough of Haddon Heights for compensatory damages sustained as a result of the direct and indirect physical impacts to the Guyer Property, the devaluation of the Guyer Property, their quality of life impacts, and recovery of attorneys' fees, costs and interest commensurate with such losses.

## COUNT III – TRESPASS
### (Borough of Haddon Heights)

74.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 73 above as if fully set forth herein.

75.     The drainage system within the Drainage Easement is owned by and was created for the benefit of the Borough and its predecessors and successors in interest and its assigns.

76.     The Borough controls the stormwater within the drainage system and Drainage Easement on the Guyer Property.

77.     The Drainage Easement and the drainage system therein were designed to artificially accumulate and direct water directly into the backyard area of the Guyer Property, among other neighboring properties.

78.     Such conduct by the Borough has the effect of bringing stormwater to the Guyer Property during rain events.

79.     But for the Borough's (a) allowance of improvements to the property adjacent to the Guyer Property which were constructed on or about the Drainage Easement and which divert stormwater onto the Guyer Property (b) accumulation of water through the Drainage Easement and drainage system therein owned and operated by the Borough, stormwater would not have entered and caused damage to the Guyer Property.

80.     The act of allowing stormwater to aggregate, accumulate, enter the Guyer Property and cause physical impact and damage to the Guyer Property is an act of trespass upon the Guyer Property owned by Plaintiffs.

81.     As a direct and proximate result of the Borough's acts of trespass as described and averred herein, Plaintiffs have suffered harm such as significant damage to their property and home, have had their quality of life negatively impacted, have suffered significant devaluation of their property and will continue to suffer the inability to economically market their property, thus having the value of their property taken without just compensation by the Borough, and have suffered other economic and non-economic damages as a result therefrom.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Borough of Haddon Heights for compensatory damages sustained as a result of the direct and indirect physical impacts to the Guyer Property, the devaluation of the Guyer Property, their quality of life impacts, and recovery of attorneys' fees, costs and interest commensurate with such losses.

## COUNT IV – INVERSE CONDEMNATION
### (Borough of Haddon Heights)

82.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 81 above as if fully set forth herein.

15

83.     The physical incursion of the stormwater controlled by the Borough and directed toward the Guyer Property has the effect of permanently and substantially reducing the value of the Guyer Property.

84.     The Borough's conduct created a permanent physical and financial impact on the Guyer Property and, by directing stormwater to and onto the Guyer Property, the Borough committed a taking of Plaintiffs' property and in so doing, destroyed or substantially destroyed the beneficial use of the Guyer Property and adversely impacted the value of the Guyer Property.

85.     The Borough's conduct, at all times, was under the color of municipal and state law and the actions and inactions have, therefore, violated, among other things, the State Constitution of New Jersey, the Fifth Amendment of the United States  Constitution and 42 U.S.C. §1983.

86.     The aforementioned conduct by the Borough has effectively taken the Guyer Property from Plaintiff without just compensation and as such, the Borough's conduct constitutes an inverse condemnation or "taking".

87.     The taking of the Guyer Property by the Borough has deprived Plaintiffs of the substantial use of their property, has taken and deprived Plaintiffs of the substantial valuation of their property and in so doing, has rendered the Guyer Property unmarketable.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Borough of Haddon Heights in an amount representing the full, fair market value of the Guyer Property on the date of the taking, attorneys' fees, costs and interest commensurate with their losses.

### COUNT V – FRAUDULENT MISREPRESENTATION
### (Mr. McFetridge, DRWR and Mr. White)

88.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 87 above as if fully set forth herein.

89.    Mr. McFetridge, DRWR and Mr. White (together, the "Non-Borough Defendants"), for the reasons of deriving proceeds from the sale of the Guyer Property, directly and through the receipt of commissions and furthering the interests of Mr. McFetridge, fraudulently induced Plaintiffs to enter into the Agreement of Sale for the Guyer Property by: (a) misrepresenting to Plaintiffs that there were no material defects with the Guyer Property; (b) concealing information from the Plaintiffs regarding the Issues, and (c) causing Plaintiffs to receive a Property Condition Disclosure Statement that failed to disclose the Issues and represented that no material defects existed.

90.    Upon information and belief, in addition to the claims made in the preceding paragraph, discovery will establish that the misrepresentations and omissions of material facts were committed knowingly and wantonly in disregard of the Plaintiffs' interests through the suppression and concealment of information regarding the Issues with the Guyer Property.

91.    Such misrepresentations and omissions of material facts were calculated to further the Non-Borough Defendants' financial interests despite the damaging consequences to the Plaintiffs' economic and non-economic interests.

92.    Such misrepresentations and omissions of facts were material to the transaction at hand and were made intentionally, knowingly and/or recklessly in total disregard of the impact on Plaintiffs' economic and non-economic interests.

93.    The Non-Borough Defendants knew that information concerning the Issues was material and important to Plaintiffs in deciding whether to purchase the Guyer Property.

94.    The Non-Borough Defendants knew that revealing information concerning the Issues would likely dissuade Plaintiffs from purchasing the Guyer Property.

95.    The Non-Borough Defendants knew that the information concerning the Issues was not known or within the reach of the diligent attention and observation of the Plaintiffs.

96.    The Non-Borough Defendants knew that by representing that there were no material defects with the Guyer Property and concealing the Issues that they were not acting with integrity in connection with the sale of the Guyer Property.

97.    The Non-Borough Defendants had a duty to disclose information concerning the Issues in connection with the sale of the Guyer Property, but failed to do so.

98.    The Non-Borough Defendants' misrepresentations, omissions and/or concealment of material facts were for the purpose of inducing Plaintiffs to purchase the Guyer Property.

99.    In purchasing the Guyer Property, Plaintiffs reasonably and justifiably relied on the Non-Borough Defendants' misrepresentations, omissions and /or concealments of material facts.

100.    As a direct and proximate cause of the conduct of the Non-Borough Defendants, Plaintiffs have suffered significant harm including without limitation, the inability to use and enjoy the Guyer Property. Additionally, Plaintiff have had their quality of life negatively impacted, have suffered significant devaluation of their property and will continue to suffer the inability to economically market their property, and have suffered other economic and non-economic damages as a result therefrom.

101.    But for Non-Borough Defendants' misrepresentations, omissions and/or concealment of material facts and the Issues, Plaintiff would never have purchased the Guyer Property.

102.    The conduct of the Non-Borough Defendants is alleged to be intentional, malicious and outrageous, entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Non-Borough Defendants for compensatory damages, punitive damages, recovery of attorneys' fees, costs and interest commensurate with their losses.

## COUNT VI – NEGLIGENT MISREPRESENTATION
### (Mr. McFetridge, DRWR and Mr. White)

103.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 102 above as if fully set forth herein.

104.    In the alternative, the Non-Borough Defendants' misrepresentations, omissions and concealment of material facts (*i.e.,* the material defects and the Issues) as heretofore described were done negligently and recklessly.

105.    Plaintiffs were reasonably foreseeable recipients of the misrepresentations, omissions and concealments.

106.    Plaintiffs reasonably and justifiably relied on the Non-Borough Defendants' misrepresentations, omissions and /or concealments of material facts.

107.    As a direct and proximate result of the Non-Borough Defendants' misrepresentations, omissions and/or concealments, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Non-Borough Defendants for compensatory damages, recovery of attorneys' fees, costs and interest commensurate with their losses.

## COUNT VII – VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1, *ET SEQ.*
### (Mr. McFetridge, DRWR and Mr. White)

108.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 107 above as if fully set forth herein.

109.    Under the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-1, *et seq.,* and specifically *N.J.S.A.* 56:8-2, the knowing concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of real estate is an unlawful practice.

110.    The Non-Borough Defendants knowingly concealed, suppressed and/or omitted material facts about the defects and Issues with the intent that Plaintiffs would rely upon such concealment, suppression and omission.

111.    The Non-Borough Defendants have committed an unlawful practice under the New Jersey Consumer Fraud Act.

112.    As a direct and proximate result of the conduct of the Non-Borough Defendants, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Non-Borough Defendants for compensatory damages, treble damages pursuant to *N.J.S.A.* 56:8-19, attorneys' fees and costs of suit pursuant to *N.J.S.A.* 56:8-19, and such other relief which the Court deems equitable and just.

WEIR GREENBLATT PIERCE LLP
A Pennsylvania Limited Liability Partnership


BY:   *Jennifer Hiller Nimeroff*
        JENNIFER HILLER NIMEROFF
        *Attorneys for Plaintiffs*

Dated: June 10, 2024


## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Plaintiffs hereby designate Jennifer Hiller Nimeroff, Esquire as trial counsel for Plaintiffs in this civil action.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues.

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned hereby certifies that to the best of her knowledge and belief, the matter in controversy in this litigation is not the subject of any other action pending in any other court or of a pending arbitration proceeding, nor is another other action or arbitration proceeding contemplated. I know of no other party that should be joined in this action or who is subject to joinder in this action. I recognize the continuing obligation of each party to file with the Court and serve on all parties an amended Certification if there is a change in the facts stated in the original Certification.

WEIR GREENBLATT PIERCE LLP
A Pennsylvania Limited Liability Partnership


BY:   *Jennifer Hiller Nimeroff*
      JENNIFER HILLER NIMEROFF
      *Attorneys for Plaintiffs*

Dated: June 10, 2024


## CERTIFICATION OF COMPLIANCE WITH RULE 1:38-7(b)

I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

BY:   *Jennifer Hiller Nimeroff*
      JENNIFER HILLER NIMEROFF

Dated: June 10, 2024

## CERTIFICATION OF COMPLAINCE WITH R. 1:4-8

1. I am the attorney for Plaintiffs in this action.

2. I aver that the Complaint and all documents annexed thereto comport with the requirements of R. 1:4-8(a).

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

WEIR GREENBLATT PIERCE LLP
A Pennsylvania Limited Liability Partnership


BY:___*Jennifer Hiller Nimeroff*_____
JENNIFER HILLER NIMEROFF
*Attorneys for Plaintiffs*

Dated: June 10, 2024

# EXHIBIT "A"



**Camden County**
**Document Summary Sheet**

CAMDEN COUNTY CLERK

520 MARKET ST

CAMDEN NJ 08102

CAMDEN COUNTY, NJ
CAMDEN COUNTY CLERK'S OFFICE
DEED-OR BOOK 12262 PG 530
RECORDED 01/06/2023 13:35:39
FILE NUMBER 2023001504
RCPT # 2588163; RECD BY: eRecord
RECORDING FEES 73.00
TOTAL TAX 4,203.80

**Official Use Only**

| Transaction Identification Number | | 6449645 | 7836175 |
|---|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 12/08/2022 | **Return Address**   *(for recorded documents)* | |
| **No. of Pages** *(excluding Summary Sheet)* | 4 | NATIONAL INTEGRITY LLC (NEW) | |
| **Recording Fee** *(excluding transfer tax)* | $73.00 | ONE HOLTEC DRIVE<br>SUITE<br>MARLTON, NJ 08053 | |
| **Realty Transfer Tax** | $4,203.80 | | |
| **Total Amount** | $4,276.80 | | |
| **Document Type** | DEED/NO EXEMPTION FROM REALTY TRANSFER FEE | | |

**Municipal Codes**
   CAMDEN COUNTY                                    99

Batch Type     L2 - LEVEL 2 (WITH IMAGES)

801389

**Additional Information (Official Use Only)**

***\* DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***



**Camden County**
**Document Summary Sheet**

| Type | DEED/NO EXEMPTION FROM REALTY TRANSFER FEE | | | | |
|---|---|---|---|---|---|
| Consideration | $503,000.00 | | | | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| Document Date | 11/04/2022 | | | | |
| Reference Info | | | | | |
| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date | |
| | | | | | |

**DEED/NO EXEMPTION FROM REALTY TRANSFER FEE**

| GRANTOR | Name | Address |
|---|---|---|
| | WILLIAM MCFETRIDGE | 509 GUYER DRIVE, HADDON HEIGHTS, NJ 08035 |

| GRANTEE | Name | Address |
|---|---|---|
| | BRENDAN W BUTLER | 13 STATION AVENUE, HADDON HEIGHTS, NJ 08035 |
| | SARAH K BROWN | 13 STATION AVENUE, HADDON HEIGHTS, NJ 08035 |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | 99 | 77 | 9 | | 99 |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Page 2 of 2

FFB84B44-2286-0825-CDEC-54824C0CA618/6449645 7836175

CFN 2023001504 BK 12262 PG 531

McElle 213

Record & Return to:
National Integrity LLC
One Holtec Drive, Suite 102
Marlton, NJ 08053

# Deed

This Deed is made on Nov 4 2022
**BETWEEN WILLIAM McFETRIDGE,**

whose post office address is 509 Guyer Drive, Haddon Heights, NJ 08035
referred to as the Grantor,

**AND BRENDAN W. BUTLER and SARAH K. BROWN**

whose post office address is 13 Station Avenue, Haddon Heights, NJ 08035
referred to as the Grantee.
The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

**1. Transfer of Ownership.**        The Grantor grants and conveys (transfers ownership of) the property (called the "Property") described below to the Grantee. This transfer is made for the sum of **FIVE HUNDRED THREE THOUSAND ($503,000.00) DOLLARS**

The Grantor acknowledges receipt of this money.

**2. Tax Map Reference.**     (N.J.S.A. 46:15-1.1) Haddon Heights Borough
Block No. 77    Lot No. 9        Account No.
____ No property tax identification number is available on the date of this Deed. (Check if applicable.)

**3. Property.**     The Property consists of the land and all the buildings and structures on the land in the Borough of Haddon Heights, County of Camden, State of New Jersey.

**XXX** Please see attached Legal Description annexed hereto and made a part hereof (check if applicable).

Being the same land and premises which became vested in William McFetridge by Deed from Michael L. Johnston, dated July 12, 2021, recorded August 7, 2021 in Deed Book 11820, Page 999.

Being the same land and premises vested in Michael L. Johnston by Deed from Michael L. Johnston, Executor of the Estate of Denise A. Johnston, deceased, also known as Denise Ann Johnston, dated December 14, 2017, recorded February 12, 2018 in Deed Book 10820, Page 1979.

Prepared by:
MICHAEL J. MCELHATTON, ESQ.

CFN 2023001504 BK 12262 PG 532

## LEGAL DESCRIPTION

Issuing Office File No. N616215

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in Haddon Heights Borough, County of Camden, State of New Jersey:

Beginning at a point in the Northeasterly line of Guyer Drive distant 426.60 feet Northwardly of the Northwestwardly and of curved intersection of the Northeasterly line of Guyer Drive with the Northwesterly line of Twelfth Avenue, said point being in the division line between Lots 9 and 15; thence

1) North 21 degrees 08 minutes 03 seconds West along the Northeasterly line of Guyer Drive 80 feet to the division line between Lots 8 and 9; thence

2) Along said division line North 68 degrees 51 minutes 57 seconds East 150.60 feet to the middle line of a 15 feet wide drainage easement; thence

3) Along the middle line of said easement South 39 degrees 23 minutes 03 seconds East 84.24 feet to corner to Lots 11 and 13; thence

4) South 68 degrees 51 minutes 57 seconds West along line of Lot 15, 176.98 feet to the Northeasterly line of Guyer Drive and place of beginning.

FOR INFORMATION PURPOSE ONLY: Being known as Tax Lot 9, Tax Block 77 on the Official Tax Map of Haddon Heights Borough, State of New Jersey. Commonly known as 509 Guyer Drive, Haddon Heights, NJ 08035.

The street address of the Property is 509 Guyer Drive, Haddon Heights, NJ 08035.

**4.  Promises by Grantor.**   The Grantor promises that the Grantor has done no act to encumber the Property.
This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6).  This promise means that the grantor
has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage
or allowing a judgment to be entered against the Grantor).

**5.  Signatures.**   The Grantor signs this Deed as of the date at the top of the first page. (Print name below signature).

Witnessed By:

_____                    _____ (Seal)
                                                                WILLIAM McFETRIDGE

STATE OF New Jersey  }
                                     } SS.
COUNTY OF Burlington  }

I CERTIFY that on   Nov 4, 2022   , William McFetridge

personally came before me and stated to my satisfaction that this person (or if more than one, each person):
    a.  was the maker of this Deed;
    b.  executed this Deed as his or her own act; and
    c.  made this Deed for $503,000.00 as the full and actual consideration paid or to be paid for
       the transfer of title.  (Such consideration is defined in N.J.S.A. 46:15-5.)

_____
Print name and title below signature

| RECORD AND RETURN TO: |
|---|
|  |

TRICIA NATALE
Commission # 50097344
Notary Public, State of New Jersey
My Commission Expires
January 23, 2024

CFN 2023001504 BK 12262 PG 534

GIT/REP-3
(2-21)
(Print or Type)

# State of New Jersey
## Seller's Residency Certification/Exemption

## Seller's Information

Name(s)
William McFetridge

Current Street Address
107 W. Preston

City, Town, Post Office
Wildwood Crest NJ

State
NJ

ZIP Code
08260

## Property Information

| Block(s) | Lot(s) | Qualifier |
|----------|--------|-----------|
| 77 | 9 | |

Street Address
509 Guyer Drive

City, Town, Post Office
Haddon Heights

State
NJ

ZIP Code
08035

| Seller's Percentage of Ownership | Total Consideration | Owner's Share of Consideration | Closing Date |
|----|----|----|----|
| 100 | $503,000.00 | $503,000.00 | 11-4-22 |

## Seller's Assurances (Check the Appropriate Box) (Boxes 2 through 16 apply to Residents and Nonresidents)

1. ☒ Seller is a resident taxpayer (individual, estate, or trust) of the State of New Jersey pursuant to the New Jersey Gross Income Tax Act, will file a resident Gross Income Tax return, and will pay any applicable taxes on any gain or income from the disposition of this property.

2. ☒ The real property sold or transferred is used exclusively as a principal residence as defined in 26 U.S. Code section 121.

3. ☐ Seller is a mortgagor conveying the mortgaged property to a mortgagee in foreclosure or in a transfer in lieu of foreclosure with no additional consideration.

4. ☐ Seller, transferor, or transferee is an agency or authority of the United States of America, an agency or authority of the State of New Jersey, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or a private mortgage insurance company.

5. ☐ Seller is not an individual, estate, or trust and is not required to make an estimated Gross Income Tax payment.

6. ☐ The total consideration for the property is $1,000 or less so the seller is not required to make an estimated Income Tax payment.

7. ☐ The gain from the sale is not recognized for federal income tax purposes under 26 U.S. Code section 721, 1031, or 1033 (CIRCLE THE APPLICABLE SECTION). If the indicated section does not ultimately apply to this transaction, the seller acknowledges the obligation to file a New Jersey Income Tax return for the year of the sale and report the recognized gain.
   ☐ Seller did not receive non-like kind property.

8. ☐ The real property is being transferred by an executor or administrator of a decedent to a devisee or heir to effect distribution of the decedent's estate in accordance with the provisions of the decedent's will or the intestate laws of this State.

9. ☐ The real property being sold is subject to a short sale instituted by the mortgagee, whereby the seller agreed not to receive any proceeds from the sale and the mortgagee will receive all proceeds paying off an agreed amount of the mortgage.

10. ☐ The deed is dated prior to August 1, 2004, and was not previously recorded.

11. ☐ The real property is being transferred under a relocation company transaction where a trustee of the relocation company buys the property from the seller and then sells the house to a third party buyer for the same price.

12. ☐ The real property is being transferred between spouses or incident to a divorce decree or property settlement agreement under 26 U.S. Code section 1041.

13. ☐ The property transferred is a cemetery plot.

14. ☐ The seller is not receiving net proceeds from the sale. Net proceeds from the sale means the net amount due to the seller on the settlement sheet.

15. ☐ The seller is a retirement trust that received an acknowledgment letter from the Internal Revenue Service that the seller is a retirement trust, and is therefore not required to make the estimated Gross Income Tax payment.

16. ☐ The seller (and/or spouse/civil union partner) originally purchased the property while a resident of New Jersey as a member of the U.S. Armed Forces and is now selling the property as a result of being deployed on active duty outside of New Jersey. (Only check this box if applicable and neither boxes 1 nor 2 apply.)

## Seller's Declaration

The undersigned understands that this declaration and its contents may be disclosed or provided to the New Jersey Division of Taxation and that any false statement contained herein may be punished by fine, imprisonment, or both. I furthermore declare that I have examined this declaration and, to the best of my knowledge and belief, it is true, correct and complete. By checking this box ☐ I certify that a Power of Attorney to represent the seller(s) has been previously recorded or is being recorded simultaneously with the deed to which this form is attached.

| | | |
|---|---|---|
| 11-4-22 | | |
| Date | Signature (Seller) | Indicate if Power of Attorney or Attorney in Fact |
| | | |
| Date | Signature (Seller) | Indicate if Power of Attorney or Attorney in Fact |

# EXHIBIT "B"

DEED—CORPORATION (31)                    Mannahatta Clerk & Scott Co., Printers of New Jersey Legal Blanks, Camden, N. J. 08101

BOOK 3229 PAGE 237

# This Indenture, MADE THE

16th day of March in the year of

our Lord one thousand nine hundred and seventy-two

**Between** GEMBERLING HOMES, INC., a corporation organized and existing under/and by virtue of the laws of the State of New Jersey, party

of the first part, and

WILLIAM T. LOWTHER and DONNA JEAN LOWTHER, his wife, of 509 Guyer Drive (formerly 13th Avenue), Lot 9, Block 77, Haddon Heights, County of Camden and State of New Jersey, party

of the second part;

**Witnesseth,** That the said party of the first part, for and in consideration of

the sum of FORTY-ONE THOUSAND EIGHT HUNDRED EIGHTY ($41,880.00) DOLLARS

lawful money of the United States of America,

well and truly paid by the said party of the second part to the said party of the first part, at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged has granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed and by these presents does grant, bargain, sell, alien, enfeoff, release, convey and confirm, unto the said party of the second part, their heirs and assigns,

ALL THAT CERTAIN lot, tract or parcel of land and premises being situate in the Borough of Haddon Heights, County of Camden and State of New Jersey, more particularly bounded and described as follows:

BEGINNING at a point in the Northeasterly line of Guyer Drive distant 426.68 feet Northwestwardly of the Northwesterly end of curved intersection of the Northeasterly line of Guyer Drive with the Northwesterly line of Twelfth Avenue, said point being in the division line between lots 9 and 15; thence (1) NORTH 21 degrees 08 minutes 03 seconds West along the Northeasterly line of Guyer Drive 80 feet to the division line between lots 8 and 9; thence (2) along said division line North 68 degrees 51 minutes 57 seconds East 150.60 feet to the middle line of a 15 feet wide drainage easement; thence (3) along the middle line of said easement South 39 degrees 23 minutes

COUNTY OF CAMDEN CONSIDERATION $20.00 REALTY TRANSFER FEE $20.00

BOOK 3229 PAGE 238

1



BOOK 3229 PAGE 238

03 seconds East 84.24 feet to corner to Lots 11 and 13; thence (4)
South 68 degrees 51 minutes 57 seconds West along line of lot 15,
176. 98 feet to the Northeasterly line of Guyer Drive and Place of
Beginning.

BEING Lot 9, Block 77, on Plan of Lots, Glenwyck, dated
January 18, 1971, by Stroka & Sippel Associates, Engineering &
Surveying, Revised to February 4, 1971.

BEING part of the same lands and premises which was granted
and conveyed by Warrick Constructors to Gemberling Homes, Inc. by
deed dated January 25, 1972 and filed.

RESERVING and EXCEPTING TO the party of the first part,
Gemberling Homes, Inc., its successors and assigns, Easements in
perpetuity as follows:  (a) to install, construct, and maintain
drainage facilities on the rear 7½ feet, course South 39 degrees
23 minutes 03 seconds East; and also on easement extending from the
Westerly line of the 7½ feet easement of lot #15 extended to the
Southwesterly line of aforesaid easement; (b) that within said
rear 7½ feet of the above described premises no structure or planting
or other material shall be placed or permitted to remain or be situate
which may damage or interfere with installation or maintenance of the
drainage facilities or which may change or affect the direction of
the flow of drainage channels in the aforesaid rear 7½ feet of the
above described premises or which may obstruct or retard the flow
of water through drainage channels in the aforesaid rear 7½ feet of
the premises; (c) that said Easement area, the rear 7½ feet of the
above described premises, shall be maintained continuously by the
then owner of the premises, except only for those improvements for
which a public utility authority is responsible; and (d) to also do
everything necessary or useful for the enjoyment of the foregoing
Easements.

UNDER and SUBJECT to restrictions, easements, covenants
and conditions of record.

2

BOOK 3229 PAGE 239

**Together** with all and singular the improvements, buildings woods, ways, rights, liberties, privileges, hereditaments and appurtenances to the same belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and of every part and parcel thereof; **And also** all the estate, right, title, interest, property, possession, claim and demand whatsoever, both in law and equity, of the said party of the first part, of, in and to the said premises, and every part thereof, with the appurtenances:

**To have and to hold** the said premises above described, with all and singular the hereditaments and appurtenances, unto the said party of the second part, their heirs and assigns, to the only proper use, benefit and behoof of the said party of the second part, their heirs and assigns forever. SUBJECT AS AFORESAID

**And** the said party of the first part for **ITSELF** and its successors do es by these presents covenant, grant and agree, to and with the said party of the second part, their heirs and assigns, that it the said party of the first part, and its successors all and singular the hereditaments and premises above described and granted, or mentioned and intended so to be, with the appurtenances, unto the said party of the second part, their heirs and assigns, against it the said party of the first part, and its successors and against all and every person or persons whomsoever lawfully claiming or to claim the same, or any part thereof, by, through, from or under, it her, him, them, or any of them shall and will SUBJECT AS AFORESAID warrant and forever defend.

**In Witness Whereof**, the said party of the first part to these presents hath hereunto set ITS CORPORATE SEAL AND CAUSED THESE PRESENTS TO BE SIGNED BY ITS PROPER OFFICERS.

GEMBERLING HOMES, INC.

dated the day and year first above written

SIGNED, SEALED, AND DELIVERED    By *Martha B. Gemberling*
IN THE PRESENCE OF                Martha B. Gemberling, President

                                  Attest *Charles A. Gemberling*
                                  Charles A. Gemberling, Secretary

3



BOOK 3229 PAGE 240

STATE OF   NEW JERSEY
COUNTY OF   CAMDEN

Be it Remembered, that on this _____ day of March
in the year of our Lord one thousand nine hundred and
seventy two                                           before me,
the subscriber,  A Notary Public of New Jersey

personally appeared  Charles K. Gemberling   Secretary
of   GEMBERLING HOMES, INC.    who I am satisfied is the person who
signed the within instrument; and  he acknowledged that   he signed, sealed with the corporate seal
and delivered the same as such officer aforesaid, and that the within instrument is the voluntary act and
deed of such corporation, made by virtue of a Resolution of its Board of Directors. The full and actual con-
sideration paid or to be paid for the transfer of title to realty evidenced by the within deed, as such con-
sideration is defined in P. L. 1968, c. 49, Sec. 1(c), is $   41,880.00

                                           Esther L. Noga
                                    ESTHER L. NOGA
                                NOTARY PUBLIC OF NEW JERSEY
                                My Commission Expires Nov. 6, 1978

Deed

GEMBERLING HOMES, INC.
224-1979
—to—
WILLIAM T. LOWERE
and
DONNA JEAN LOWERE, h/w

Prepared by:
Gemberling Homes, Inc.

Dated  March 5th  1972

Entered in the Register of Deeds

Office of the County of Camden
on the   10th   day of   March
A.D. 1972  at   3:30   o'clock in
the         noon, and recorded in Book
3229                    of DEEDS
for said County, on page   237 &c.

                    Robert W. Grant
                         Register

RECORD and Return to
West Jersey Title and Guaranty Company
513 Market St., Camden, N. J. 08101

MAR 10 1972   at 3:30 PM

# EXHIBIT "C"

Authentisign ID: 9E7B333C-372A-40D7-AC31-114F9C24C9CA    -D4B053BF0EBE

## SELLER'S PROPERTY CONDITION DISCLOSURE STATEMENT

©2012, New Jersey Realtors®, Inc

**NEW JERSEY REALTORS**

1  Property Address: 509 Joyce Dr.
2
3  Haddon Heights NJ 808
4  Seller: William McFetridge
5
6
7
8  The purpose of this Disclosure Statement is to disclose, to the best of Seller's knowledge, the condition of the Property, as of the date set
9  forth below. The Seller is aware that he or she is under an obligation to disclose any known material defects in the Property even if not
10 addressed in this printed form. Seller alone is the source of all information contained in this form. All prospective buyers of the Property
11 are cautioned to carefully inspect the Property and to carefully inspect the surrounding area for any off-site conditions that may adversely
12 affect the Property. Moreover, this Disclosure Statement is not intended to be a substitute for prospective buyer's hiring of qualified ex-
13 perts to inspect the Property.
14
15 If your property consists of multiple units, systems and/or features, please provide complete answers on all such units, systems and/or
16 features even if the question is phrased in the singular, such as if a duplex has multiple furnaces, water heaters and fireplaces.
17
18
19
20 **OCCUPANCY**
21 Yes    No    Unknown
22        [ ]        1   Age of House, if known ____ 5 2
23 [X]   [ ]             2   Does the Seller currently occupy this property?
24                          If not, how long has it been since Seller occupied the property?
25                      3   What year did the Seller buy the property?  2021
26 [X]   [ ]             3a  Do you have in your possession the original or a copy of the deed evidencing your ownership of the
27                          property? If "yes," please attach a copy of it to this form.
28
29 **ROOF**
30 Yes    No    Unknown
31        [ ]        4   Age of Roof, if known ____ 7 YRS
32 [ ]   [X]             5   Has roof been replaced or repaired since Seller bought the property?
33 [ ]   [X]             6   Are you aware of any roof leaks?
34                      7   Explain any "yes" answers that you give in this section:
35
36
37 **ATTIC, BASEMENTS AND CRAWL SPACES (Complete only if applicable)**
38 Yes    No    Unknown
39 [X]   [ ]             8   Does the property have one or more sump pumps?
40 [ ]   [X]             8a  Are there any problems with the operation of any sump pump?
41 [ ]   [X]             9   Are you aware of any water leakage, accumulation or dampness within the basement or crawl spaces
42                          or any other areas within any of the structures on the property?
43 [ ]   [X]             9a  Are you aware of the presence of any mold or similar natural substance within the basement or crawl
44                          spaces or any other areas within any of the structures on the property?
45 [ ]   [X]             10  Are you aware of any repairs or other attempts to control any water or dampness problem in the base-
46                          ment or crawl space? If "yes," describe the location, nature and date of the repairs:
47
48 [ ]   [X]             11  Are you aware of any cracks or bulges in the basement floor or foundation walls? If "yes," specify
49                          location:
50



Authentisign ID: 9E7B333C-372A-40D7-AC31-114F9C24C9CA        -D4B0538F0EBE

12. Are you aware of any restrictions on how the attic may be used as a result of the manner in which the attic or roof was constructed?

13. Is the attic or house ventilated by: __ a whole house fan? __ an attic fan?

13a. Are you aware of any problems with the operation of such a fan?

14. In what manner is access to the attic space provided?
__ staircase __ pull down stairs __ crawl space with aid of ladder or other device __ other

15. Explain any "yes" answers that you give in this section:

## TERMITES/WOOD DESTROYING INSECTS, DRY ROT, PESTS

| | Yes | No | Unknown | |
|---|---|---|---|---|
| | | | | 16. Are you aware of any termites/wood destroying insects, dry rot, or pests affecting the property? |
| | | | | 17. Are you aware of any damage to the property caused by termites/wood destroying insects, dry rot, or pests? |
| | | | | 18. If "yes," has work been performed to repair the damage? |
| | | | | 19. Is your property under contract by a licensed pest control company? If "yes," state the name and address of the licensed pest control company: ORKIN |

*JOE DOSES (N. --- SUITE --- Cherry Hill*

20. Are you aware of any termite/pest control inspections or treatments performed on the property in the past?

21. Explain any "yes" answers that you give in this section? *Drivezs HAs BEEN Repaired (around)*

## STRUCTURAL ITEMS

| | Yes | No | Unknown | |
|---|---|---|---|---|
| | | | | 22. Are you aware of any movement, shifting, or other problems with walls, floors, or foundations, including any restrictions on how any space, other than the attic or roof, may be used as a result of the manner in which it was constructed? |
| | | | | 23. Are you aware if the property or any of the structures on it have ever been damaged by fire, smoke, wind or flood? |
| | | | | 24. Are you aware of any fire retardant plywood used in the construction? |
| | | | | 25. Are you aware of any current or past problems with driveways, walkways, patios, sinkholes, or retaining walls on the property? |
| | | | | 26. Are you aware of any present or past efforts made to repair any problems with the items in this section? |

27. Explain any "yes" answers that you give in this section. Please describe the location and nature of the problem.

## ADDITIONS/REMODELS

| | Yes | No | Unknown | |
|---|---|---|---|---|
| | | | | 28. Are you aware of any additions, structural changes or other alterations to the structures on the property made by any present or past owners? |
| | | | | 29. Were the proper building permits and approvals obtained? Explain any "yes" answers you give in this section: |

## PLUMBING, WATER AND SEWAGE

| | Yes | No | Unknown | |
|---|---|---|---|---|
| | | | | 30. What is the source of your drinking water? Public X Community System __ Well on Property __ Other (explain) |
| | | | | 31. If your drinking water source is not public, have you performed any tests on the water? If so, when? Attach a copy of or describe the results. |
| | | | | 32. Does the wastewater from any clothes washer, dishwasher, or other appliance discharge to any loca- |

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St. Suite 2200, Dallas TX 75201   www.lwolf.com        Untitled

Authentisign ID: 9E7B333C-372A-40D7-AC31-114F9C24C9CA  -D4B0538F0EBE

| | | | |
|---|---|---|---|
| 111 | | | tion other than the sewer, septic, or other system that services the rest of the property? |
| 112 | | | 33. When was well installed? |
| 113 | | | Location of well? |
| 114 | | | 34. Do you have a softener, filter, or other water purification system? __ Leased __ Owned |
| 115 | | | 35. What is the type of sewage system? |
| 116 | | | __ Public Sewer __ Private Sewer __ Septic System __ Cesspool __ Other (explain): |
| 117 | | | 36. If you answered "septic system," have you ever had the system inspected to confirm that it is a true |
| 118 | | | septic system and not a cesspool? |
| 119 | | | 37. If Septic System, when was it installed? |
| 120 | | | Location? |
| 121 | | | 38. When was the Septic System or Cesspool last cleaned and/or serviced? |
| 122 | | | 39. Are you aware of any abandoned Septic Systems or Cesspools on your property? |
| 123 | | | 39a. If "yes," is the closure in accordance with the municipality's ordinance? (explain): |
| 124 | | | |
| 125 | | | 40. Are you aware of any leaks, backups, or other problems relating to any of the plumbing systems and |
| 126 | | | fixtures (including pipes, sinks, tubs and showers), or of any other water or sewage related problems? |
| 127 | | | If "yes," explain: |
| 128 | | | |
| 129 | | | 41. Are you aware of any shut off, disconnected, or abandoned wells, underground water or sewage |
| 130 | | | tanks, or dry wells on the property? |
| 131 | | | 42. Is either the private water or sewage system shared? If "yes," explain: |
| 132 | | | |
| 133 | | | 43. Water Heater: __ Electric __ Fuel Oil ✗ Gas |
| 134 | | | Age of Water Heater |
| 135 | | | 43a. Are you aware of any problems with the water heater? |
| 136 | | | 44. Explain any "yes" answers that you give in this section: |
| 137 | | | |
| 138 | | | |
| 139 | | | |

### HEATING AND AIR CONDITIONING

| | Yes | No | Unknown | |
|---|---|---|---|---|
| 140 | | | | |
| 141 | | | | 45. Type of Air Conditioning: |
| 142 | | | | ✗ Central one zone __ Central multiple zone __ Wall/Window Unit __ None |
| 143 | | | | 46. List any areas of the house that are not air conditioned: |
| 144 | | | | |
| 145 | | | | |
| 146 | | | | 47. What is the age of Air Conditioning System? 7 yrs |
| 147 | | | | 48. Type of heat: __ Electric __ Fuel Oil __ Natural Gas ✗ Propane __ Unheated __ Other |
| 148 | | | | 49. What is the type of heating system? (for example, forced air, hot water or base board, radiator, steam |
| 149 | | | | heat) FORCED AIR |
| 150 | | | | 50. If it is a centralized heating system, is it one zone or multiple zones? |
| 151 | | | | |
| 152 | | | ✗ | 51. Age of furnace _____ Date of last service: _____ |
| 153 | | | | 52. List any areas of the house that are not heated: |
| 154 | | | | |
| 155 | | ✗ | | 53. Are you aware of any tanks on the property, either above or underground, used to store fuel or other |
| 156 | | | | substances? |
| 157 | | | | 54. If tank is not in use, do you have a closure certificate? |
| 158 | | ✗ | | 55. Are you aware of any problems with any items in this section? If "yes," explain: |
| 159 | | | | |
| 160 | | | | |

### WOODBURNING STOVE OR FIREPLACE

| | Yes | No | Unknown | |
|---|---|---|---|---|
| 162 | | | | 56. Do you have __ wood burning stove? ✗ fireplace? __ insert? __ other |
| 163 | | | | 56a. Is it presently usable? |
| 164 | ✗ | | | 57. If you have a fireplace, when was the flue last cleaned? |
| 165 | | | ✗ | 57a. Was the flue cleaned by a professional or non-professional? |
| 166 | | | ✗ | 58. Have you obtained any required permits for any such item? |
| 167 | | | | 59. Are you aware of any problems with any of these items? If "yes," please explain: |
| 168 | | ✗ | | |
| 169 | | | | |
| 170 | | | | |

72

Authentisign ID: 9E7B333C-372A-40D7-AC31-114F9C24C9CA    -D4B0538F0EBE

## ELECTRICAL SYSTEM

| | Yes | No | Unknown | | |
|---|---|---|---|---|---|
| 171 | | | | | |
| 172 | | | | 60. | What type of wiring is in this structure? __ Copper __ Aluminum __ Other X Unknown |
| 173 | | | | 61. | What amp service does the property have? __ 60 __ 100 __ 150 __ 200 __ Other X Unknown |
| 174 | | | | 62. | Does it have 240 volt service? Which are present X Circuit Breakers, __ Fuses or __ Both? |
| 175 | [ ] | [ ] | [ ] | 63. | Are you aware of any additions to the original service? |
| 176 | [ ] | [X] | | | If "yes," were the additions done by a licensed electrician? Name and address: |
| 177 | | | | | |
| 178 | | | | | |
| 179 | | | | 64 | If "yes," were proper building permits and approvals obtained? |
| 180 | [ ] | [ ] | [ ] | 65 | Are you aware of any wall switches, light fixtures or electrical outlets in need of repair? |
| 181 | [ ] | [X] | | 66 | Explain any "yes" answers you give in this section: |
| 182 | | | | | |
| 183 | | | | | |
| 184 | | | | | |
| 185 | | | | | |

## LAND (SOILS, DRAINAGE AND BOUNDARIES)

| | Yes | No | Unknown | | |
|---|---|---|---|---|---|
| 186 | | | | | |
| 187 | | | | 67 | Are you aware of any fill or expansive soil on the property? |
| 188 | [ ] | [X] | | 68. | Are you aware of any past or present mining operations in the area in which the property is located? |
| 189 | [ ] | [X] | | 69. | Is the property located in a flood hazard zone? |
| 190 | [ ] | [X] | | 70. | Are you aware of any drainage or flood problems affecting the property? |
| 191 | [ ] | [X] | | 71 | Are there any areas on the property which are designated as protected wetlands? |
| 192 | [ ] | [X] | [ ] | 72. | Are you aware of any encroachments, utility easements, boundary line disputes, or drainage or other easements affecting the property? |
| 193 | [ ] | [X] | | 73. | Are there any water retention basins on the property or the adjacent properties? |
| 194 | | | | | |
| 195 | [ ] | [X] | | 74. | Are you aware if any part of the property is being claimed by the State of New Jersey as land presently or formerly covered by tidal water (Riparian claim or lease grant)? Explain: |
| 196 | [ ] | [X] | | | |
| 197 | | | | | |
| 198 | | | | | |
| 199 | | | | 75 | Are you aware of any shared or common areas (for example, driveways, bridges, docks, walls, bulkheads, etc.) or maintenance agreements regarding the property? |
| 200 | [ ] | [X] | | 76. | Explain any "yes" answers to the preceding questions in this section: |
| 201 | | | | | |
| 202 | | | | | |
| 203 | | | | | |
| 204 | | | | | |
| 205 | [ ] | [y] | | 77 | Do you have a survey of the property? |
| 206 | | | | | |

## ENVIRONMENTAL HAZARDS

| | Yes | No | Unknown | | |
|---|---|---|---|---|---|
| 207 | | | | | |
| 208 | | | | 78. | Have you received any written notification from any public agency or private concern informing you that the property is adversely affected, or may be adversely affected, by a condition that exists on a property in the vicinity of this property? If "yes," attach a copy of any such notice currently in your possession |
| 209 | [ ] | [X] | | | |
| 210 | | | | | |
| 211 | | | | 78a. | Are you aware of any condition that exists on any property in the vicinity which adversely affects, or has been identified as possibly adversely affecting, the quality or safety of the air, soil, water, and/or physical structures present on this property? If "yes," explain: |
| 212 | [ ] | [X] | | | |
| 213 | | | | | |
| 214 | | | | | |
| 215 | | | | | |
| 216 | | | | 79. | Are you aware of any underground storage tanks (UST) or toxic substances now or previously present on this property or adjacent property (structure or soil), such as polychlorinated biphenyl (PCB), solvents, hydraulic fluid, petro-chemicals, hazardous wastes, pesticides, chromium, thorium, lead or other hazardous substances in the soil? If "yes," explain: |
| 217 | [ ] | [X] | | | |
| 218 | | | | | |
| 219 | | | | | |
| 220 | | | | | |
| 221 | | | | | |
| 222 | | | | | |
| 223 | [ ] | [X] | | 80. | Are you aware if any underground storage tank has been tested? |
| 224 | | | | | (Attach a copy of each test report or closure certificate if available). |
| 225 | [ ] | [X] | [ ] | 81. | Are you aware if the property has been tested for the presence of any other toxic substances, such as lead-based paint, urea-formaldehyde foam insulation, asbestos-containing materials, or others? (Attach copy of each test report if available). |
| 226 | | | | | |
| 227 | | | | 82. | If "yes" to any of the above, explain: |
| 228 | | | | | |
| 229 | | | | | |
| 230 | | | | | |

73

Authentisign ID: 9E7B333C-372A-40D7-AC31-114F9C24C9CA    -D4B0538F0EBE

| 231 | | | | | | 82a. If "yes" to any of the above, were any actions taken to correct the problem? Explain: |
| 232 | | | | | | |
| 233 | | | | | | |
| 234 | | | | | | 83. Is the property in a designated Airport Safety Zone? |
| 235 | | | | | | |

## DEED RESTRICTIONS, SPECIAL DESIGNATIONS, HOMEOWNERS ASSOCIATION/CONDOMINIUMS AND CO-OPS

| | Yes | No | Unknown | |
|---|---|---|---|---|
| 237 | | | | |
| 238 | [ ] | [X] | | 84. Are you aware if the property is subject to any deed restrictions or other limitations on how it may |
| 239 | | | | be used due to its being situated within a designated historic district, or a protected area like the |
| 240 | | | | New Jersey Pinelands, or its being subject to similar legal authorities other than typical local zoning |
| 241 | | | | ordinances? |
| 242 | [ ] | [X] | | 85. Is the property part of a condominium or other common interest ownership plan? |
| 243 | [ ] | [X] | | 85a. If so, is the property subject to any covenants, conditions, or restrictions as a result of its being part |
| 244 | | | | of a condominium or other form of common interest ownership? |
| 245 | [ ] | [X] | | 86. As the owner of the property, are you required to belong to a condominium association or homeown- |
| 246 | | | | ers association, or other similar organization or property owners? |
| 247 | [ ] | [X] | | 86a. If so, what is the Association's name and telephone number? |
| 248 | | | | |
| 249 | [ ] | [X] | [ ] | 86b. If so, are there any dues or assessments involved? |
| 250 | | | | If "yes," how much? |
| 251 | [ ] | [X] | | 87. Are you aware of any defect, damage, or problem with any common elements or common areas that |
| 252 | | | | materially affects the property? |
| 253 | [ ] | [X] | | 88. Are you aware of any condition or claim which may result in an increase in assessments or fees? |
| 254 | [ ] | [X] | [ ] | 89. Since you purchased the property, have there been any changes to the rules or by-laws of the Asso- |
| 255 | | | | ciation that impact the property? |
| 256 | | | | 90. Explain any "yes" answers you give in this section: |
| 257 | | | | |
| 258 | | | | |
| 259 | | | | |

## MISCELLANEOUS

| | Yes | No | Unknown | |
|---|---|---|---|---|
| 261 | | | | |
| 262 | [ ] | [ ] | | 91. Are you aware of any existing or threatened legal action affecting the property or any condominium |
| 263 | | | | or homeowners association to which you, as an owner, belong? |
| 264 | [ ] | [ ] | | 92. Are you aware of any violations of Federal, State or local laws or regulations relating to this prop- |
| 265 | | | | erty? |
| 266 | [ ] | [ ] | | 93. Are you aware of any zoning violations, encroachments on adjacent properties, non-conforming |
| 267 | | | | uses, or set-back violations relating to this property? If so, please state whether the condition is pre |
| 268 | | | | existing non-conformance to present day zoning or a violation to zoning and/or land use laws. |
| 269 | | | | |
| 270 | | | | |
| 271 | [ ] | [ ] | | 94. Are you aware of any public improvement, condominium or homeowner association assessments |
| 272 | | | | against the property that remain unpaid? Are you aware of any violations of zoning, housing, build- |
| 273 | | | | ing, safety or fire ordinances that remain uncorrected? |
| 274 | [ ] | [X] | [ ] | 95. Are there mortgages, encumbrances or liens on this property? |
| 275 | [ ] | [X] | | 95a. Are you aware of any reason, including a defect in title, that would prevent you from conveying |
| 276 | | | | clear title? |
| 277 | [ ] | [X] | | 96. Are you aware of any material defects to the property, dwelling, or fixtures which are not dis- |
| 278 | | | | closed elsewhere on this form? (A defect is "material," if a reasonable person would attach impor- |
| 279 | | | | tance to its existence or non-existence in deciding whether or how to proceed in the transaction.) |
| 280 | | | | If "yes," explain: |
| 281 | | | | |
| 282 | [ ] | [X] | | 97. Other than water and sewer charges, utility and cable tv fees, your local property taxes, any special |
| 283 | | | | assessments and any association dues or membership fees, are there any other fees that you pay on |
| 284 | | | | an ongoing basis with respect to this property, such as garbage collection fees? |
| 285 | | | | 98. Explain any other "yes" answers you give in this section: |
| 286 | | | | |
| 287 | | | | |
| 288 | | | | |
| 289 | | | | |
| 290 | | | | |

Produced with ... www.lwolf.com

Authentisign ID: 9E7B333C-372A-40D7-AC31-114F9C24C9CA        -D4B0538F0EBE

291 **RADON GAS** Instructions to Owners
292 By law (N.J.S.A. 26:2D-73), a property owner who has had his or her property tested or treated for radon gas may require that information
293 about such testing and treatment be kept confidential until the time that the owner and a buyer enter into a contract of sale, at which time
294 a copy of the test results and evidence of any subsequent mitigation or treatment shall be provided to the buyer. The law also provides that
295 owners may waive, in writing, this right of confidentiality. As the owner(s) of this property, do you wish to waive this right?

296 Yes    No
297 [X]    [ ]    [W]
298         (Initials)        (Initials)
299
300 If you responded "yes," answer the following questions. If you responded "no," proceed to the next section
301
302 Yes    No    Unknown
303 [X]    [ ]    99. Are you aware if the property has been tested for radon gas? (Attach a copy of each test report if
304                 available.)
305 [ ]    [X]    100. Are you aware if the property has been treated in an effort to mitigate the presence of radon gas? (If
306                 "yes," attach a copy of any evidence of such mitigation or treatment.)
307 [ ]    [X]    101. Is radon remediation equipment now present in the property?
308 [ ]    [ ]    101a. If "yes," is such equipment in good working order?
309
310
311 **MAJOR APPLIANCES AND OTHER ITEMS**
312 The terms of any final contract executed by the Seller shall be controlling as to what appliances or other items, if any, shall be included
313 in the sale of the property. Which of the following items are present in the property? (For items that are not present, indicate "not ap-
314 plicable.")
315
316 Yes    No    Unknown    NA
317 [X]    [ ]              [ ]    102. Electric Garage Door Opener
318 [ ]    [ ]              [ ]    102a. If "yes," are they reversible? Number of Transmitters    /
319 [ ]    [ ]    [ ]    [ ]    103. Smoke Detectors
320                 [X] Battery    Electric    Both How many
321                 [ ] Carbon Monoxide Detectors  How many  2
322                 Location  Each story of Each floor
323 [ ]    [X]              [ ]    104. With regard to the above items, are you aware that any item is not in working order?
324                 104a. If "yes," identify each item that is not in working order or defective and explain the nature
325                 of the problem
326
327 [ ]    [X]              [ ]    105. __ In-ground pool __ Above-ground pool __ Pool Heater __ Spa/Hot Tub
328 [ ]    [ ]    [ ]    [ ]    105a. Were proper permits and approvals obtained?
329 [ ]    [ ]              [ ]    105b. Are you aware of any leaks or other defects with the filter or the walls or other structural or
330                 mechanical components of the pool or spa/hot tub?
331 [ ]    [ ]              [ ]    105c. If an in-ground pool, are you aware of any water seeping behind the walls of the pool?
332                 106. Indicate which of the following may be included in the sale? (Indicate Y for yes N for no.)
333                 [ ] Refrigerator
334                 [X] Range
335                 [ ] Microwave Oven
336                 [ ] Dishwasher
337                 [ ] Trash Compactor
338                 [X] Garbage Disposal
339                 [ ] In-Ground Sprinkler System
340                 [ ] Central Vacuum System
341                 [ ] Security System
342                 [X] Washer
343                 [X] Dryer
344                 [ ] Intercom
345                 [ ] Other
346 [X]    [ ]    [ ]    107. Of those that may be included, is each in working order?
347                 If "no," identify each item not in working order, explain the nature of the problem:
348
349
350

75

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        Untitled

Authentisign ID: 9E7B333C-372A-40D7-AC31-114F0C24C9CA    -D4B0538F0EBE

**SOLAR PANEL SYSTEMS**

By completing this section, Seller is acknowledging that the Property is serviced by a Solar Panel System, which means a system of solar panels designed to absorb the sunlight as a source of energy for generating electricity or heating, any and all inverters, net meter, wiring roof supports and any other equipment pertaining to the Solar Panels (collectively, the "Solar Panel System"). This information may be used, among other purposes, to prepare a Solar Panel Addendum to be affixed to and made a part of a contract of sale for the Property.

|  | Yes | No | Unknown |  |
|---|---|---|---|---|
|  |  |  | [ ] | 108. When was the Solar Panel System Installed? _____ |
|  | [ ] | [ ] |  | 109. Are SRECs available from the Solar Panel System? |
|  |  |  | [ ] | 109a. If SRECs are available, when will the SRECs expire? _____ |
|  | [ ] | [ ] | [ ] | 110. Is there any storage capacity on your Property for the Solar Panel System? |
|  | [ ] | [ ] | [ ] | 111. Are you aware of any defects in or damage to any component of the Solar Panel System? If yes, explain: _____ |

**112. Choose one of the following three options:**

[ ]  112a. The Solar Panel System is financed under a power purchase agreement or other type of financing arrangement which requires me/us to make periodic payments to a Solar Panel System provider in order to acquire ownership of the Solar Panel System ("PPA")? If yes, proceed to **Section A** below.

[ ]  112b. The Solar Panel System is the subject of a lease agreement. If yes, proceed to **Section B** below.

[ ]  112c. I/we own the Solar Panel System outright. If yes, you do not have to answer any further questions.

**SECTION A - THE SOLAR PANEL SYSTEM IS SUBJECT TO A PPA**

[ ]  113. What is the current periodic payment amount? $

[ ]  114. What is the frequency of the periodic payments (check one)? [ ] Monthly [ ] Quarterly

[ ]  115 What is the expiration date of the PPA, which is when you will become the owner of the Solar Panel System? _____    ("PPA Expiration Date")

[ ]  116. Is there a balloon payment that will become due on or before the PPA Expiration Date?

[ ]  117. If there is a balloon payment, what is the amount? $

**118. Choose one of the following three options:**

[ ]  118a. Buyer will assume my/our obligations under the PPA at Closing.

[ ]  118b. I/we will pay off or otherwise obtain cancellation of the PPA as of the Closing so the Solar Panel System can be included in the sale free and clear.

[ ]  118c. I/we will remove the Solar Panel System from the Property and pay off or otherwise obtain cancellation of the PPA as of the Closing.

**SECTION B - THE SOLAR PANEL SYSTEM IS SUBJECT TO A LEASE**

[ ]  119. What is the current periodic lease payment amount? $ _____

[ ]  120. What is the frequency of the periodic lease payments (check one)? [ ] Monthly [ ] Quarterly

[ ]  121. What is the expiration date of the lease?

**122 Choose one of the following two options:**

[ ]  122a. Buyer will assume our obligations under the lease at Closing.

[ ]  122b. I/we will obtain an early termination of the lease and will remove the Solar Panel System prior to Closing.

**SECTION C. THE SOLAR PANEL SYSTEM IS SUBJECT TO ENERGY CERTIFICATE(S)**

[ ] [ ] [ ]  123. Are Solar Transition Renewable Energy Certificates (TRECs) available from the Solar Panel System?

[ ]  123a. If TRECs are available, when will the TRECs expire?

[ ] [ ] [ ]  124. Are Solar Renewable Energy Certificate IIs (SREC IIs) available from the Solar Panel System?

[ ]  124 a. If SREC IIs are available, when will the SREC IIs expire?

**LEAD PLUMBING**

|  | Yes | No | Unknown |  |
|---|---|---|---|---|
|  | [ ] | [X] | [ ] | 125. Are you aware of the presence of any lead plumbing, including, but not limited to any service line, piping materials, fixtures, and solder. If "yes," explain: _____ |

76

Authentisign ID: 9E7B333C-372A-40D7-AC31-114F9C24C9CA    -D4B0538F0EBE

## WATER INTRUSION

| | Yes | No | Unknown |
| | [ ] | [X] | [ ] |

126. Are you aware of any water leakage, accumulation or dampness, the presence of mold or other similar natural substance, or repairs or other attempts to control any water or dampness problem on the property? If yes, please describe the nature of the issue and any attempts to repair or control it and refer to the 'Mold Guidelines for New Jersey Residents' pamphlet issued by the New Jersey Department of Health (www.njrealtor.com/mold-guidelines-pamphlet):

If you would like a physical copy of the pamphlet, your real estate broker, broker-salesperson, or salesperson will provide it

## ACKNOWLEDGMENT OF SELLER

The undersigned Seller affirms that the information set forth in this Disclosure Statement is accurate and complete to the best of Seller's knowledge, but is not a warranty as to the condition of the Property. Seller hereby authorizes the real estate brokerage firm representing or assisting the Seller to provide this Disclosure Statement to all prospective buyers of the Property, and to other real estate agents. Seller alone is the source of all information contained in this statement. If the Seller relied upon any credible representations of another, the Seller should state the name(s) of the person(s) who made the representation(s) and describe the information that was relied upon.

SELLER _____    DATE _____

SELLER _____    DATE _____

SELLER _____    DATE _____

SELLER _____    DATE _____

## EXECUTOR, ADMINISTRATOR, TRUSTEE

(If applicable) The undersigned has never occupied the property and lacks the personal knowledge necessary to complete this Disclosure Statement.

_____    DATE _____

_____    DATE _____

## RECEIPT AND ACKNOWLEDGMENT BY PROSPECTIVE BUYER

The undersigned Prospective Buyer acknowledges receipt of this Disclosure Statement prior to signing a Contract of Sale pertaining to this Property. Prospective Buyer acknowledges that this Disclosure Statement is not a warranty by Seller and that it is Prospective Buyer's responsibility to satisfy himself or herself as to the condition of the Property. Prospective Buyer acknowledges that the Property may be inspected by qualified professionals, at Prospective Buyer's expense, to determine the actual condition of the Property. Prospective Buyer further acknowledges that this form is intended to provide information relating to the condition of the land, structures, major systems and amenities, if any, included in the sale. This form does not address local conditions which may affect a purchaser's use and enjoyment of the property such as noise, odors, traffic volume, etc. Prospective Buyer acknowledges that they may independently investigate such local conditions before entering into a binding contract to purchase the property. Prospective Buyer acknowledges that he or she understands that the visual inspection performed by the Seller's real estate broker/broker-salesperson/salesperson does not constitute a professional home inspection as performed by a licensed home inspector.

NJ REALTORS® | Form-140 | 4/2022   Page 8 of 9

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Untitled

77

Authentisign ID: 9E7B333C-372A-40D7-AC31-114F9C24C9CA    D4B0538F0EBE

475 *Brendan W. Butler*                        10/05/22 | 5:13 PM PDT
476 PROSPECTIVE BUYER                          DATE
477
478
479 *Sarah Brown*                              10/05/22 | 7:51 PM EDT
480 PROSPECTIVE BUYER                          DATE
481
482
483
484 PROSPECTIVE BUYER                          DATE
485
486
487
488 PROSPECTIVE BUYER                          DATE
489
490
491 **ACKNOWLEDGMENT OF REAL ESTATE BROKER/BROKER-SALESPERSON/SALESPERSON**
492 The undersigned Seller's real estate broker/broker-salesperson/salesperson acknowledges receipt of the Property Disclosure Statement
493 form and that the information contained in the form was provided by the Seller.
494 The Seller's real estate broker/broker-salesperson/salesperson also confirms that he or she visually inspected the property with reason-
495 able diligence to ascertain the accuracy of the information disclosed by the seller, prior to providing a copy of the property disclosure
496 statement to the buyer.
497 The Prospective Buyer's real estate broker/broker-salesperson/salesperson also acknowledges receipt of the Property Disclosure State-
498 ment form for the purpose of providing it to the Prospective Buyer
499
500                                             DATE: 5/10/2022
501 SELLER'S REAL ESTATE BROKER/
502 BROKER-SALESPERSON/SALESPERSON
503
504 *Leonard Antonelli*                         10/05/22 | 10:54 AM EDT
505
506 PROSPECTIVE BUYER'S REAL ESTATE BROKER/     DATE
507 BROKER-SALESPERSON/SALESPERSON:
508
509
510
511
512
513
514
515
516
517
518
519
520
521
522
523
524
525
526
527
528
529
530
531
532
533
534
535

78

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Untitled

# Civil Case Information Statement

**Case Details: CAMDEN | Civil Part Docket# L-001780-24**

**Case Caption:** BUTLER BRENDAN  VS MCFETRIDGE WILLIAM

**Case Initiation Date:** 06/10/2024

**Attorney Name:** JENNIFER LAUREN HILLER

**Firm Name:** WEIR GREENBLATT PIERCE LLP

**Address:** 35 KINGS HIGHWAY EAST SUITE 200 HADDONFIELD NJ 08033

**Phone:** 8564297750

**Name of Party:** PLAINTIFF : Butler, Brendan, W

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** INVERSE CONDEMNATION

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Brendan W Butler?** NO

**Are sexual abuse claims alleged by: Sarah K Butler?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
     **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
     **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** YES  **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/10/2024
Dated

/s/ JENNIFER LAUREN HILLER
Signed